```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON
```

WAHOOWA, INC. and
SUVAC, INC.,

    Plaintiffs,

v.                                      Civil Action no. 2:17-cv-04422

CONSOL OF KENTUCKY, LLC,
CONSOL ENERGY, INC., and
SOUTHEASTERN LAND, LLC,

    Defendants.


### MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiffs' motion to remand the case to the Circuit Court of Mingo County, West Virginia, filed on December 7, 2017.

I.    Procedural posture

This civil action was initiated with the complaint in that circuit court on September 15, 2017. On September 22, 2017, plaintiffs filed their first amended complaint (ECF No. 1-2). The action was removed to this court on November 29, 2017.

Plaintiffs allege that defendant CONSOL Energy, Inc. ("Consol") directed and orchestrated an improper assignment to defendant Southeastern Land, LLC ("Southeastern") of a mining lease ("Wahoowa Lease") in Harvey District, Mingo County, West

Virginia, under which defendant CONSOL of Kentucky, LLC ("COK"), Consol's wholly owned subsidiary, was lessee and the plaintiffs were lessors. First Am. Compl. at ¶¶ 2, 3, 6, 7, 26. According to plaintiffs, the transfer to Southeastern not only violated Section 18(a) of the lease, which governs assignments, but also amounted to a fraudulent transfer under W. Va. Code § 40-1A. Id. at ¶¶ 5, 18, 22-26. In particular, COK did not obtain the plaintiffs' required consent before proceeding with the assignment.

The assignment was part of a larger transaction for mining tracts in the area embodied in a purchase and sale agreement between several Consol subsidiaries, including COK, and Southeastern. In a filing with the Securities and Exchange Commission, Consol represented that Southeastern had agreed to assume approximately $103 million of specified liabilities, including mine closing and reclamation liabilities, for a number of coal leases transferred by the Consol subsidiaries to Southeastern. Id. at ¶¶ 15-16. In consideration, the Consol subsidiaries were obligated to pay approximately $44 million to Southeastern, of which $27 million was paid in cash at closing. Id. at 16. Consol pointed out that the area no longer fit the Consol portfolio and that its transfer to Southeastern strengthened Consol's balance sheet "because the area generated negative earnings." Id. at ¶ 17. Plaintiffs allege that this transaction resulted in COK "not receiving a reasonably

2

equivalent value in exchange for its rights and benefits under the [Wahoowa] Lease." Id. at ¶ 21.

Upon plaintiffs' information and belief, Consol thus engaged in the asset stripping of COK, such that it is no longer intended to be an operational company but has rather become a "shell." Id. at ¶¶ 15, 24. While COK gave a guaranty of Southeastern's performance, plaintiffs are concerned about the viability of such guaranty and seek a judgment that would disregard COK's corporate form and obligate Consol as the lessee instead. Id. at ¶¶ 13-15, 24, 26. In addition to requesting a declaratory judgment, id. at ¶ 22, plaintiffs note that the court "may" order the following relief: avoidance of the assignment, an attachment or other provisional remedy, and injunctive or other appropriate relief, id. at ¶ 27.

Plaintiffs have moved to remand on the ground that as a purported diversity action, it does not meet the $75,000 amount in controversy requirement necessary for federal jurisdiction under 28 U.S.C. § 1332.

II. Analysis

As the removing party, defendants bear the burden of proving that the case meets the amount in controversy requirement. Plaintiffs assert, and the court agrees, that the appropriate standard of proof is the preponderance of the

evidence.  See Bartnikowski v. NVR, Inc., 307 Fed. App. 730, 734 n. 7 (4th Cir. 2009) (noting that other circuits have explicitly adopted the preponderance of the evidence standard where damages are unspecified).

In this case, there is no ad damnum clause, and the plaintiffs do not expressly seek monetary relief.  The test for determining the amount in a declaratory action is "the pecuniary result to either party which [a] judgment would produce."  Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Emps. Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir.1964)).

Plaintiffs essentially offer two arguments for remand, which are in tension with each other: that the value of the lease is not at issue at all; and that the defendants have not shown that such value exceeds the jurisdictional threshold.  Pffs.' Br.  The second argument has greater ostensible merit, and plaintiffs appear to back away from the first one in their reply briefs.

The first argument — that the value of the lease is not in issue — rests on the premise that plaintiffs do not request monetary relief, but rather contest the propriety of the assignment.  Yet, under the "either party" view of Dixon, itself a declaratory judgment action, it matters much to Consol on whom plaintiffs would impose the guaranty given by COK and to Southeastern who may lose its mining rights under the Wahoowa

4

Lease, particularly inasmuch as that lease is an integral part of a whole set of mining leases that it will operate jointly.

Plaintiffs contend that they do not aim to deprive Southeastern of the "ability to mine the premises" because Southeastern will still be able to seek to enter into a new, proper agreement with Consol (as noted, plaintiffs assert that COK is a shell entity whose corporate veil should be disregarded). ECF No. 20 at 3. However, this contention is speculative. In actuality, should the plaintiffs prevail in this action, the lease would revert to COK, scrambling Southeastern's mining plans. Or, if the veil is pierced and Consol is deemed the lessee obligated under the lease to plaintiffs, the value of the lease is enhanced by Consol's likely superior financial status. Thus, the lease is the "object of the litigation," by which the amount in controversy is measured. Hunt v. Wash. St. Apple Advert. Comm'n, 432 U.S. 333, 347 (1977).

The court must endeavor to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal, and other relevant materials in the record. 14C C. Wright & A. Miller, Fed. Prac. and Proc., 3725 at 73 (3d ed. 1998) (cited in Tominak v. Capouillez, No. 5:13-CV-121, 2013 WL 5913848, at *2 (N.D.W. Va. Nov. 4, 2013)). Under the circumstances, the court sees fit to consider the post-removal

5

affidavits as well, particularly in this case, where both sides submitted them. See Tominak, 2013 WL 5913848, at *3.

Defendants have proffered several pieces of evidence, including the minimum rental payment, the value of coal reserves, and the importance of the tracts covered by the Wahoowa Lease to the larger interests transferred to Southeastern.

The Consol defendants cite paragraph 21 of the lease, which requires a current minimum rental payment of $115,570 per year.[1] They maintain that "[t]his fact, by itself, easily establishes that the amount in controversy threshold is met." ECF No. 13 at 9. And insofar as plaintiffs ask the court to return the lease from Southeastern to Consol, "the Lease, as well as the value of any obligations under the Lease" (including, without limitation, the minimum rental amounts due) are placed "at issue." Id. at 6 (emphasis in the original). Plaintiffs argue that the rental amount argument "misses the mark" for several reasons. For one, the rental payment is owing to plaintiffs irrespective of the assignment and so its amount is supposedly not relevant; but, of course, plaintiffs want the lease in the hands of Consol, doubtless because they regard the parent as financially superior to its subsidiary "shell," COK.

---

[1] The lease was made with Huntington Realty Corporation in 2005. By two separate deeds in 2015, that corporation conveyed the mineral interests to Wahoowa and the surface interests to Suvac in and to twelve tracts of real property at issue in this controversy. First Am. Compl. at ¶ 2.

6

Plaintiffs also state that potential reclamation liabilities "can far exceed the royalty payments." ECF No. 21 at 3-4. That is true but coal lease royalty payments are normally established with that factor in mind.

Southeastern's general manager, Keith Bartley, stated in his affidavit that "the Wahoowa Lease contains approximately 680,000 recoverable tons of permitted coal reserves" and Southeastern "will realize a profit substantially in excess of $.20 per ton on the sale of the coal." Bartley Aff., ECF No. 15-1 at ¶ 4. That would equate to "substantially in excess of" $136,000. Plaintiffs have acknowledged Bartley's estimate to be "probative." ECF No. 20 at 2. At the same time, they argue that defendants have not revealed any valuations of the lease that they may have prepared in connection with the assignment. ECF No. 20 and attachments. Plaintiffs also characterize Bartley's figure as incomplete insofar as it does not incorporate long-term reclamation liabilities. ECF No. 20 at 2.

It is also represented that "Southeastern Land requires the Wahoowa Lease to allow access on adjoining tracts and coal haulage from those tracts." Bartley Aff. at ¶ 5. Without the Wahoowa Lease Southeastern's ability to mine on other properties transferred from Consol's subsidiaries to it would be impaired. Id. Plaintiffs counter that the effects of the suit on the adjoining parcels ought not to be considered because they are "collateral or incidental" under Healy v.

7

Ratta, 292 U.S. 263, 268 (1934). ECF No. 20 at 3. The strategic importance of the Wahoowa Lease to Southeastern, however, is not merely incidental but is a component of the damage that would be realized by Southeastern if deprived of that lease.

To buttress their methodological objection to defendants' valuation attempts, plaintiffs have furnished two expert affidavits of their own. Ben Daud, a mining engineer, called the royalty approach to estimating the amount in controversy "simplistic and incorrect" for not taking into account the legacy liabilities and the potential liability of Wahoowa and takes issue with Bartley's estimate for not following an "established methodology" that uses "a mix of comparative sales . . . the net present value . . . and associated liabilities." Daud Aff., ECF No. 21-1 at ¶¶ 7, 9. For his part, an accounting expert, Robert J. Rufus, observed that "neither [Consol nor Southeastern] . . . has disclosed information establishing the value of the subject lease pursuant to Generally Accepted Accounting Principles . . ." Rufus Aff., ECF No. 21-2 at ¶ 5. The implication of this methodological objection appears to be that the true book value of the Wahoowa Lease may in fact be less than $75,000, for defendants would have disclosed it otherwise.

As noted, the burden of demonstrating jurisdiction resides with the party seeking removal. Mulcahey v. Columbia

Organic Chems. Co., 29 F.3d 148, 151 (4th Cir.1994). A court may consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. See Mullins v. Harry's Mobile Homes, 861 F.Supp. 22, 24 (S.D.W. Va. 1994). Accordingly, having summarized the parties' principal contentions and the supporting evidence, the court reaches the conclusions that follow.

In light of three independent and cooperative factors, namely, the minimum rental amount of $115,000, which in one year exceeds the jurisdictional threshold; Southeastern's assessment of the value of the recoverable coal reserves as substantially in excess of $136,000; and testimony that access to the tracts in the Wahoowa Lease is important for mining adjoining tracts, coupled with plaintiffs' claim that would impose the terms and obligations of that lease on Consol, the court is satisfied that the removing defendants have shown, by a preponderance of the evidence, that the amount in controversy well exceeds $75,000. Accordingly, the motion to remand is denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: January 26, 2018

John T. Copenhaver, Jr.
United States District Judge