```
                    UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF WEST VIRGINIA
                           AT CHARLESTON
```

WAHOOWA, INC., and
SUVAC, INC.,

      Plaintiffs,

v.                              Civil Action No. 2:17-cv-4422

CONSOL OF KENTUCKY, INC.
(fka Consol of Kentucky, LLC),
CNX RESOURCES CORPORATION
(fka Consol Energy, Inc.), and
SOUTHEASTERN LAND, LLC,

      Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is plaintiffs' motion for declaratory judgment, filed August 23, 2018. Also pending is the joint motion for summary judgment of the defendants, CONSOL of Kentucky, Inc.[1] ("COK"), CNX Resources Corp.[2] ("CONSOL Energy"), and Southeastern Land, LLC ("Southeastern"), filed January 15, 2019.

---

[1] COK states that CONSOL of Kentucky, Inc. was converted into CONSOL of Kentucky, LLC, a single member limited liability company owned by CONSOL Energy, Inc., in 2017. Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 58, at 1 n.1. The names of this same entity as set forth in the case caption are reversed.

[2] The second amended complaint, filed December 28, 2018, replaces Consol Energy, Inc. with CNX Resources Corp. as a defendant. It appears that CNX Resources has simply taken the place of Consol Energy, Inc. in this litigation, although neither has filed an answer to the second amended complaint.

## I. Background

On March 24, 2005, Huntington Realty, Inc. ("Huntington"), as Lessor, entered into a coal lease ("the Lease") with Southern West Virginia Energy, LLC ("Southern WVE"), as the "Lessee." Second Am. Compl., ECF No. 55, at ¶ 3; Lease Agreement, ECF No. 41-1, at 5. At the time the Lease was executed, Southern WVE was comprised of a fifty-one percent membership interest owned by Eagle Mining, LLC and a forty-nine percent interest owned by CONSOL of WV, LLC, a subsidiary of CONSOL Energy. Second Am. Compl., ECF No. 55 at ¶ 4. In 2008, CONSOL of WV, LLC acquired Eagle Mining, LLC's membership interest in Southern WVE, and effective December 26, 2008, Southern WVE was merged into COK, with COK as the surviving entity. Id. ¶ 6. COK, a Delaware limited liability company, is a wholly-owned subsidiary of CONSOL Energy, which appears to now be CNX Resources Corp., each of which is a Delaware corporation. Id. ¶ 7; see also Not. Removal, ECF No. 1, at ¶¶ 11, 12.

As a result of the merger, the parties agree that COK is the "Lessee" in the Lease to Southern WVE. Pls.' Reply, ECF No. 50, at 3; Defs.' Mem. Supp. Mot. Summary J. ("Defs.' Mem."), ECF No. 58, at 2.

On February 25, 2015, HRC conveyed portions of the land under the Lease to plaintiffs Wahoowa, Inc. ("Wahoowa") and SUVAC, Inc. ("SUVAC"), both West Virginia corporations. Second Am. Compl., ECF No. 55 at ¶ 2; Not. Removal, ECF No. 1, at ¶ 9-10. Wahoowa received the mineral interests and SUVAC the surface interests to twelve tracts of the property covered by the Lease. Second Am. Compl., ECF No. 55, at ¶ 2.

On July 19, 2016, CONSOL Energy notified plaintiffs that COK intended to assign its entire interest in the Lease to Southeastern, a Kentucky limited liability company. Second Am. Compl., ECF No. 55, at ¶ 9; Not. Removal, ECF No. 1, at ¶ 13. Later, in August 2016, CONSOL Energy informed the plaintiffs that the transaction had closed on August 1, 2016 and that COK had guaranteed Southeastern's performance under the Lease. Second Am. Compl., ECF No. 55, at ¶ 11.

Wahoowa and SUVAC initiated this civil action in the Circuit Court of Mingo County, West Virginia on September 15, 2017, pursuant to the Uniform Declaratory Judgment Act, W. Va. Code § 55-13-1 et seq. Specifically, the plaintiffs ask that the court "find and determine the assignment of the Lease from COK to Southeastern is improper, invalid and contrary to the terms and provisions of the Lease." Second Am. Compl., ECF No. 55, at ¶ 17.

Section 12 of the Lease states that

> it is the essence of this Lease that Lessor enters into this Lease expressly relying upon the demonstrated skill, experience, character, substance, credit and ability of Lessee and its present management. . . . Lessor and Lessee hereto expressly recognize and acknowledge that the obligations of Lessee hereunder are "personal services" of Lessee, a Lessee whom Lessor considers to be uniquely competent and qualified to perform those services. . . . For these reasons, Lessor demands, and Lessee specifically agrees to, performance of all Lessee's obligations herein from Lessee alone and, subject to Section 18 of this Lease, from no other person or entity.

Lease Agreement, ECF No. 41-1, at 14-15.

Section 18a of the lease governs assignments and provides as follows:

> a. Lessee shall not sell, assign or transfer this Lease without the prior written consent of Lessor. Without denigrating the value to Lessor of Lessee's "personal services" and Lessor's reliance on the skill and ability of Lessee (as is more particularly elaborated in Sections 12 and 36 of this Lease), Lessor and Lessee agree that Lessee may freely assign, without written consent, its rights under this Lease to a wholly-owned subsidiary or an affiliate of, which is also controlled by, Consol Energy, Inc. or a wholly-owned subsidiary or an affiliate of Lessee so long as Lessee has the same partners as of the date of this Lease. Lessor and Lessee have also agreed that Lessee may freely assign, without written consent, its rights under this Lease to a third party with reasonable experience in the mining, marketing, and processing of coal if the third party has a net worth of at least $35,000,000 or to a third party with reasonable experience in the mining, marketing, and processing of coal if Consol Energy, Inc. or Lessee, so long as Lessee has the same partners as of the date of this Lease, guarantees the performance of the terms and provisions of this Lease by such third-party assignee. A sale or other transfer of fifty percent

4

>      (50%) or more of the stock or membership interest of
>      Lessee to or the merger of Lessee into another entity
>      where Lessee is not the surviving entity shall
>      constitute assignment of the Lease for purposes of
>      this Section 18(a). Provided, however, a purchase by
>      Consol Energy, Inc., or its affiliates of all of the
>      stock or membership interest in Lessee shall not
>      constitute an assignment of the Lease for purposes of
>      this Section 18(a).
>
>                        *   *   *
>
>      The restrictions on assignment and subleasing
>      contained in this provision should be construed such
>      that if Consol Energy, Inc., a wholly-owned subsidiary
>      of Consol Energy, Inc. or an affiliate controlled by
>      Consol Energy, Inc. (collectively, "Consol Affiliate")
>      is not the lessee or a partner or member of an entity
>      which is the lessee, then the new assignee must have a
>      net worth of $35 million dollars or a Consol Affiliate
>      or Lessee, so long as Lessee has the same partners as
>      of the date of this Lease, guarantees the performance
>      under this Lease.

**Id.** at 23-24.

The court finds that the drafters' use of the word "partners" in Section 18a doubtless refers to CONSOL of WV, LLC and Eagle Mining, LLC, even though those two entities were members, and not partners in the conventional sense, of the originally named Lessee, Southern WVE. Indeed, "[a]n LLC with at least two members is classified as a partnership for federal income tax purposes." IRS Pub. 3402, at 2 (Jan. 1, 2016). It is noted that, inasmuch as the court concludes that COK as "Lessee" does not have the same partners that the Lessee had as

5

of the date of the lease, the "Lessee, so long as" terms are inoperative.

Defendants removed this matter to this court on November 29, 2017, pursuant to 28 U.S.C. § 1332.

The plaintiffs' motion for declaratory judgment, which the court treats as a motion for summary judgment,[3] asks the court to declare COK's assignment of the Lease to Southeastern invalid and that "COK is now, and has been since August 1, 2016, the lessee of the Lease." Pls.' Mot. Declaratory J., ECF No. 40, at 4; Pls.' Mem. Supp. Mot. Declaratory J. ("Pls.' Mem."), ECF No. 41, at 12. COK and CONSOL Energy responded jointly to plaintiffs' motion, and Southeastern did so separately.

---

[3] "[A] party may not make a motion for declaratory relief, but rather, the party must bring an action for declaratory judgment." Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 823, 830 (11th Cir. 2010) (emphasis in original) (citation omitted). Here, the plaintiffs assert that the relevant facts are clear, based on the language of the Lease, and that courts have construed such motions for declaratory judgment as motions for summary judgment. See Alston v. Va. High Sch. League, Inc., 144 F. Supp. 2d 526, 529 (W.D. Va. 1999). The court notes that COK and CONSOL Energy argue that plaintiffs' motion is improper under the federal rules. COK & CONSOL's Resp., ECF No. 47, at 3-4. While this is true, the court may rule on the motion as if it is a motion for summary judgment for the reasons discussed above.

Plaintiffs have replied to each response, and Southeastern subsequently filed a surreply.[4]

The plaintiffs, in their first amended complaint, inadvertently omitted two paragraphs that were included in the original complaint which asked that the court "find and determine the assignment of the Lease from COK to Southeastern is improper, invalid and contrary to the terms and provisions of the lease," Compl., ECF No. 49-1, ¶ 17, and to "prescribe a proper and appropriate remedy allowed by law to correct the inappropriate assignment . . . ," id. at ¶ 18. The court permitted the plaintiffs to correct this omission by filing the second amended complaint on December 28, 2018, which included, among other minor amendments, those previously omitted paragraphs. ECF No. 54.[5]

On January 15, 2019, defendants filed a joint motion for summary judgment. The plaintiffs have since filed a response to which the defendants have replied. In these briefings, the parties incorporate several arguments made in the

---

[4] Inasmuch as Southeastern's motion to file a surreply has not been objected to and it addresses new arguments that plaintiffs raised in their reply, the court grants Southeastern's motion.
[5] Defendants COK and CONSOL Energy first argue in their response in opposition to plaintiffs' motion that plaintiffs seek relief that was not raised in the first amended complaint. COK & CONSOL's Resp., ECF No. 47, at 5-6. However, the permitted amendment cures this defect and renders this argument moot.

briefings of plaintiffs' motion for declaratory judgment (hereinafter "plaintiffs' motion for summary judgment").

## II. Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the

motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Applicable Law

In cases grounded in diversity jurisdiction, "federal courts are to apply the substantive law the State in which they are sitting would apply if the case had originated in a State court." Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978). Further, Section 47 of the Lease provides that "[t]his Lease shall for all purposes be governed by and construed in accordance with the laws of the State of West Virginia." Lease Agreement, ECF No. 41-1, at 40.

The Court of Appeals for the Fourth Circuit has observed that the matter of "[c]ontract interpretation is a subject particularly suited for summary judgment disposal." Bank of Montreal v. Signet Bank, 193 F.3d 818, 835 (4th Cir. 1999). It has also been observed repeatedly, however, that "[a]n ambiguous contract that cannot be resolved by credible, unambiguous, extrinsic evidence discloses genuine issues of material fact . . . [and] summary judgment is inappropriate." Sempione v. Provident Bank of Md., 75 F.3d 951, 959 (4th Cir. 1996). Expanding upon this analysis, the Fourth Circuit has stated:

> Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible to two reasonable interpretations." American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965).... If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. See Jaftex Corp. v. Aetna Casualty and Surety Co., 617 F.2d 1062, 1063 (4th Cir. 1980). If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993) (quoting World-Wide Rights Ltd. Partnership v. Combe Inc., 955 F.2d 242, 245 (4th Cir. 1992)). Further, "[i]f there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." Atalla v. Abdul-Baki, 976 F.2d 189, 192 (4th Cir. 1992) (quoting Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723, 726 (4th Cir. 1979)).

The Supreme Court of Appeals of West Virginia has similarly stated:

> Where the terms of a contract are clear and unambiguous, they must be applied and not construed. Stated another way, [i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them. Moreover, a contract is not rendered ambiguous merely because the parties disagree as to its construction. As expressed by this Court in Syllabus point 1 of <u>Berkeley County Public Service District v. Vitro Corp. of America</u>, 152 W.Va. 252, 162 S.E.2d 189 (1968), "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court."

<u>Perrine v. E.I. du Pont de Nemours & Co.</u>, 225 W. Va. 482, 507-08, 694 S.E.2d 815, 840-41 (2010) (internal quotations and citations omitted).

"Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." <u>Fraternal Order of Police, Lodge No. 69 v. City of Fairmont</u>, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996). "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." <u>Id.</u> Additionally, "the language of a lease agreement must be

considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." Syl. Pt. 3, Moore v. Johnson Serv. Co., 158 W. Va. 808, 808, 219 S.E.2d 315, 317 (1975).

## IV. Discussion

As an initial matter, CONSOL Energy and COK's response in opposition to plaintiffs' motion for summary judgment raises several arguments that are no longer relevant. Specifically, these defendants assert that a ruling on that motion would be premature, as full discovery had not been conducted to determine whether any genuine issue of material fact existed as to, for example, Southeastern's net worth or the intent of the parties in drafting the Lease. See COK & CONSOL's Resp., ECF No. 47, at 7-8, 11-14. Now, however, full discovery has been conducted and the deadline to file dispositive motions has passed. None of the parties have presented any extrinsic evidence in support of their respective motions for summary judgment. Initially the defendants contended that pertinent terms of the lease were

ambiguous.  Each party now asserts that the terms of the Lease are unambiguous.

While the Lease generally disfavors assignment without the prior written consent of the Lessor, written consent is not needed in three circumstances: (1) when assignment is made "to a wholly-owned subsidiary or an affiliate of, which is also controlled by, Consol Energy, Inc."; (2) when assignment is made "to a third party with reasonable experience in the mining, marketing, and processing of coal if the third party has a net worth of at least $35,000,000"; or (3) when assignment is made to a "third party with reasonable experience in the mining, marketing, and processing of coal if Consol Energy, Inc. . . . guarantees the performance of the terms and provisions of this Lease by such third-party assignee."  Lease Agreement, ECF No. 41-1, at 23.

It is undisputed by the parties that COK did not become the Lessee under the Lease by means of assignment, but rather through permissible merger.  Id. ("[A] purchase by Consol Energy, Inc., or its affiliates of all of the stock or membership interest in Lessee shall not constitute an assignment of the Lease for purposes of this Section 18(a)."); Defs.' Mem., ECF No. 58, at 2; Pls.' Resp. Mem., ECF No. 60, at 1.

First, Southeastern is not a wholly-owned subsidiary of CONSOL Energy, nor is it in any way affiliated with CONSOL Energy; therefore, the first exception to the written consent requirement is not applicable. Next, inasmuch as CONSOL Energy did not guarantee the assignment to Southeastern, the third exception to the written consent requirement is also inapplicable here.

There does remain a question of fact as to the second written consent exception. From all appearances, Southeastern was not worth $35 million at the time the assignment was made to it by COK; however, no evidence has been presented by either party related to the worth of Southeastern. Inasmuch as the proponent of an exception to the otherwise required written consent should bear the burden of proof on that issue, it is the obligation of the Consol group, if it wishes to invoke that exception, to proceed with the production of evidence showing that Southeastern has "reasonable experience in the mining, marketing, and processing of coal . . . [and] . . . has a net worth of at least $35,000,000."

The court now turns to the third paragraph of the same section which may be a fourth exception or may modify one or more of the first three. As mentioned, this paragraph states:

> The restrictions on assignment and subleasing
> contained in this provision should be construed such
> that if Consol Energy, Inc., a wholly-owned subsidiary
> of Consol Energy, Inc. or an affiliate controlled by
> Consol Energy, Inc. (collectively, "Consol Affiliate")
> is not the lessee or a partner or member of an entity
> which is the lessee, then the new assignee must have a
> net worth of $35 million dollars or a Consol Affiliate
> . . . guarantees the performance under this Lease.

Lease Agreement, ECF No. 41-1, at 23-24. The term "lessee" – to be distinguished from Lessee – is not defined and may have any of a multiple of meanings.

Plaintiffs argue: "COK was the Lessee at the time of the purported assignment to Southeastern. COK is a Consol Affiliate, being a wholly owned subsidiary of CONSOL. Consequently, the condition precedent – a lessee who is <u>not</u> a Consol Affiliate making the assignment – has not been met." Pls.' Resp. Mem., ECF No. 60, at 3 (emphasis in original). Presumably, plaintiffs suggest that lessee equates with or at least includes the Lessee.

Conversely, the defendants assert that "[b]y interpreting the term "lessee" . . . to refer to the incoming lessee, the paragraph makes sense and the deliberate choice of terms made by the parties is preserved. Thus, because the new lessee is Southeastern, not an affiliate of [CONSOL Energy], a Consol Affiliate, here COK, must guarantee performance. It has

done so." Defs.' Reply, ECF No. 66, at 3. Under the defendants' view, the term lessee excludes the Lessee.

The court concludes that the term "lessee" as used in the third paragraph of Section 18a is ambiguous. It is unclear as to whom the term "lessee" applies in these circumstances. Consequently, the court is unable to render judgment on either of the parties' cross motions for summary judgment.

## V. Conclusion

In view of the foregoing, it is ORDERED:

1. That Southeastern's motion for leave to file a surreply, filed October 24, 2018, be, and hereby is, granted;

2. That the surreply filed attached as Exhibit 1 to Southeastern's motion be, and hereby is, deemed filed;

3. That defendants' motion for summary judgment be, and hereby is, denied without prejudice; and

4. That plaintiffs' motion for summary judgment be, and hereby is, denied without prejudice.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: May 8, 2019

John T. Copenhaver, Jr.
Senior United States District Judge